17 So.2d 585

**WARREN v. PEPPERS.**

**4 Div. 791.**

Court of Appeals of Alabama.
April 4, 1944.

Rehearing Denied April 18, 1944.

J. B. Hicks, of Phenix City, for appellant.

Roy L. Smith and W. R. Belcher, both of Phenix City, for appellee.

BRICKEN, Presiding Judge.

Appellee, Peppers, brought this suit against appellant, Warren, seeking damages for the alleged conversion of a Ford motor truck, and for the sum of $112, alleged in count 2, of the amended complaint, to be due for work and labor done by plaintiff for defendant; and in count 3 of said amended complaint, alleged to be due by account.

The case was tried before the court without a jury on the amended complaint, and on defendant's pleas of the general issue, and of res adjudicata.

The trial court rendered judgment for plaintiff for the sum of $668 damages for the conversion of the motor truck described in the complaint, and for the sum of $118.72 for work and labor done by plaintiff for defendant.

The defendant filed his motion for a new trial on the four grounds therein set forth, to which was added a fifth ground by amendment to said motion.

The court overruled and denied the motion for a new trial and defendant excepted.

Warren, appellant, appealed from the judgment of the court below, and makes the following assignments of error on this record:

"The court erred in overruling the appellant's motion for new trial. The court erred in overruling the appellant's amended motion for new trial."

The 4 grounds set out in the original motion for a new trial were:

"1. That the judgment of the Court is contrary to the evidence, and without evidence to support this finding of the Court.

"2. That the judgment and finding of the Court is decidedly against the weight and sufficiency of the evidence.

"3. That there is no evidence that authorizes a recovery by the Plaintiff.

"4. That the Plaintiff had no title to the property sued for as shown by the undisputed evidence."

To the above grounds there was added by amendment of said motion a fifth ground. Viz: "The court should have sustained defendant's plea of res adjudicata."

The bill of exceptions discloses that upon the trial of this case in the court below the testimony introduced was partly oral, and partly written.

█ The well established rule is that when the appellate courts are required to review a judgment of the trial court sitting without a jury, in a case where the evidence was given ore tenus, or partly so, and the trial court has the advantage of seeing and hearing the witnesses, and observing their demeanor on the stand, etc., the judgment of the trial court will not be disturbed, unless it is plainly and palpably contrary to the weight of the evidence. Gillespie v. Bartlett & Byers, 211 Ala. 560, 100 So. 858.

The defendant testified in his own behalf and in addition thereto he introduced the testimony of several other witnesses all of whom testified orally before the trial court,

and in addition thereto the defendant introduced in evidence certain paper writings which he claimed were copies of a judicial proceeding and judgment thereon in the circuit court of Chattahoochee County, Georgia, wherein it was claimed that J. J. Peppers, Jr., was the complainant and W. L. Warren, J. V. Brown and Mrs. Edith Brown were respondents, and by which it was also claimed that the court of the sister state rendered a judgment in behalf of the respondent.

It is not deemed necessary for this court to discuss the evidence adduced upon the trial of this case minutely and at length. It is proper to say, however, that the testimony offered in behalf of the plaintiff tended to show that on or about August 5, 1941, the plaintiff rented to Mr. W. L. Warren a Ford motor truck which was to be used by Mr. Warren at Fort Benning, Georgia, and for the use of which the defendant was to pay plaintiff a rental of $1 per hour, and that the driver of the truck would also be paid 50¢ per hour for his labor; that he carried his truck to Fort Benning, Georgia, and delivered it to Mr. Warren when he rented it to him. His testimony in this connection was as follows:

"I worked out at Fort Benning from the 9th day of August until the 19th day of December, when I got laid off. The truck was kept, at the Second Armored Division at the warehouse, at Fort Benning, trucks were all parked out there on the truck line. The keys to the truck were put on his key board, they had a board for the keys to the trucks under his contract. My contract terminated about the 19th day of December, at that time I did not get the truck back, and I haven't gotten it back yet. I delivered it to Mr. Warren when I rented it to him."

Plaintiff further testified that when he carried the truck to Fort Benning it was first inspected and that he knew nothing about the contract on which it was to be used except that it was a Government contract; that the money he received for the rental of the truck was paid by Mr. Warren and that the check he received from Mr. Warren signed by Mr. Brown was for money due the plaintiff by Mr. Warren and borrowed by him from Mr. Brown; that when he left his truck at Fort Benning it was left on the parking lot where the trucks rented by Mr. Warren were kept; that when plaintiff rented said

truck to Mr. Warren it was worth $1,000 and that when he demanded possession of the truck from Mr. Warren, Mr. Warren told him that a Mr. Brown had the contract, and that plaintiff then said "That was the first I ever heard of it."

It developed on cross-examination of the plaintiff that he bought the truck from Hardaway Motor Company on a conditional sales contract by which plaintiff paid a part of the purchase price, in cash, with the remainder to be paid monthly over a period of time; that the contract was financed through Mr. R. S. DesPortes to whom was assigned said conditional sales contract which carried a retention of title to the Hardaway Motor Company and which said contract was endorsed or transferred by said Motor Company to said DesPortes and was transferred and assigned by said DesPortes on January 1, 1942, to R. V. Brown according to the endorsement thereon. The plaintiff objected to the introduction of said paper writing and the endorsements thereon in evidence and the court overruled the objections and the plaintiff excepted.

The plaintiff further testified that he did not rent the truck to Mr. Brown, and did not tell him that it was free of all obligations; that as a matter of fact said truck was not free of all obligations, but he rented it to Mr. Warren; that he understood that the truck would be entered in the name of the one who had the contract and that he did not know that the Government would take his truck, or that it had taken it; that he rented the truck to Mr. Warren and that he did not have any contract with Mr. Brown and that the only thing Mr. Brown ever told him was that they would pay him the balance of his money; that Mr. Warren and Mr. Brown were living in the same house at that time; that he rented the truck to Mr. Warren and knew that Mr. Warren was using it on work for the Government; that Mr. Warren paid him; that Mr. Brown was not paying him and that he had never tried to sell the truck to Mr. Brown; that he had received altogether $604, which did not include his labor, and that Mr. Warren still owed him $112 for labor; that he did not know Mrs. Brown and had never seen her; that he demanded his truck from Warren and that Warren did not return it to him.

The testimony of plaintiff's witnesses tended to corroborate the testimony given by the plaintiff, himself, in his own behalf.

The testimony of W. L. Warren, the defendant, testifying in his own behalf tended to show in substance that he hired the plaintiff's truck to do some hauling for two or three months on another contract; and this contract had nothing whatever to do with the subsequent contract made between Mr. Peppers and Mrs. Edith Brown; that he had no interest in the Peppers' truck, had never claimed any title to it, and had never been in possession of it; that the two checks given by him to Mr. Peppers were given to him to cover money that Mr. Brown came by and left with him for Mr. Peppers.

Upon cross examination the witness testified that his contract with Mr. Peppers was at Fort Benning and that during the months of October, November and December the witness had a contract at Fort Benning, and that he had some dump trucks.

Defendant's witnesses, McKee, Knight, Thornell and Thomas Brown and J. V. Brown, all testified in substance that the plaintiff's contract was with Mrs. Brown.

During the testimony of defendant's witness, J. V. Brown, a contract purporting to be between Mrs. Edith Brown, Cusseta, Georgia, lessor, and the United States of America, lessee, under the terms of which it was provided that said lessor had agreed to rent to the lessee a 1941 Ford motor truck of the appraised value of $1,250, was introduced in evidence. It was without dispute that said Ford motor truck was the truck known as the Peppers' truck and being the same truck for the alleged conversion of which the suit in this case was brought.

The contract in question between Mrs. Edith Brown and the United States of America contained the following clause:

"When and if the total rental paid to the lessor for any piece of equipment shall equal the value thereof, plus one per cent per month for each month or fraction thereof such piece of equipment shall have been in use, no further rental shall be paid to the lessor and title to the equipment shall vest in the Government, the lessor delivering to the Government free of any and all liens and encumbrances title to such piece of equipment."

It is perfectly apparent that if the plaintiff rented to Mrs. Edith Brown his Ford motor truck, knowing that she was going to rent the same to the United States of America under a contract containing the above provisions and Mrs. Brown did rent the said truck to the United States of America and that the latter exercised its right to take over said truck under the terms of said contract and did take the same over under said contract then the plaintiff was not entitled to recover.

On the other hand if Mr. Peppers rented his truck to Mr. Warren and Mr. Warren, without authority from Mr. Peppers, delivered said truck to Mrs. Brown without the knowledge or consent of Mr. Peppers, the plaintiff, for some use to which she desired to put said motor truck, then Mr. Warren was guilty of a conversion when he took the Peppers truck from the use for which Peppers rented it to him and delivered it to Mrs. Brown.

On the claim of the plaintiff with reference to the rental of said Ford motor truck and on the claim of Mr. Warren, the defendant, with reference to the rental of said truck the evidence was in sharp conflict.

It was a question for the trial court to determine with whom under all of the testimony Mr. Peppers had his contract. The trial court evidently determined that Mr. Peppers' contract of rental was with Mr. Warren, the defendant, and not with Mrs. Edith Brown, and that said defendant was guilty of a conversion in surrendering said truck to the said Mrs. Brown. There is abundant evidence in this record to support the finding of the trial court on this question.

In the case of Armour Fertilizer Works v. Alabama Farm Bureau Cotton Ass'n, 25 Ala.App. 452, 148 So. 748, 749, it was said:

"The cause was tried by the court without a jury, and judgment was rendered upon testimony, the tendencies of which were in sharp conflict. Where this is true, the judgment of the court has the same effect as a verdict of a jury, and will not be disturbed unless it is apparent that the conclusion reached by the court is contrary to the weight of testimony. It is only where the judgment appealed from is plainly contrary to the weight of the testimony, or where there is no evidence to support it, will the judgment be reversed."

We do not think that the defendant can complain because the Peppers truck at the time he rented it was subject to a conditional sales contract which carried with it a reservation of title to the Ford truck involved. The defendant did

not connect himself with that sales agreement, nor in so far as this record discloses did that agreement adversely affect his rental of the Peppers truck from the plaintiff, if he did rent it.

■ To support an action of trover for the conversion of personal property the plaintiff must have general or special title to the property in question, or immediate right of possession; and the party complained against must have wrongfully exerted some act of dominion over such property inconsistent with and destructive of the title and possession or right of possession to the plaintiff. American Standard Life Ins. Co. v. Johnson, 231 Ala. 94, 163 So. 632; Wingfield Motor Co. v. Dupont, 24 Ala.App. 262, 134 So. 37; Assets Realization Co. v. Ganus, 25 Ala.App. 113, 141 So. 721.

■■ Under plaintiff's conditional sales contract he had at the time of the alleged conversion of his truck by the defendant the title thereto as against all the world except his vendor and its assigns. He had the immediate right of possession of said truck upon the termination of his rental agreement with Warren. If Warren in disregard of the rights of the plaintiff to the possession of said truck, delivered the same to Mrs. Brown, still Warren would be liable for the conversion notwithstanding that R. S. DesPortes then was the owner of the conditional sales contract given by Mr. Peppers to the Hardaway Motor Company. When Mrs. Brown purchased this contract from Mr. DesPortes, or when Mr. Brown purchased it, it was so purchased for the protection of Mrs. Brown under her lease contract with the United States of America. She had represented, under oath, that said truck was free from all liens and encumbrances and that she had the right to lease said truck to the United States Government. In no way does Mr. Warren connect himself with that conditional sales contract nor is he entitled to set it up as a defense to this suit. We conclude, therefore, with the opinion that the trial court did not err in overruling defendant's motion for a new trial upon the first four grounds therein set out.

It is next contended by the appellant that the entire subject matter of this suit was foreclosed by a prior suit against this defendant, and others, in the circuit court of Chattahoochee County, Georgia, and that a judgment rendered by said circuit court of said sister state is res adjudicata in so far as the suit in the court below was concerned. The defendant interposed his plea of res adjudicata in the court below and in support of that plea, over the objection and exception of the plaintiff, the defendant offered in evidence what purports to be a petition in equity filed in the Superior Court of Chattahoochee County, Georgia, involving the identical truck involved in the suit in the court below, and what purports to be the judgment of the Superior Court of Chattahoochee County, Georgia, in equity, sustaining a demurrer to said bill of complaint and dismissing said cause in said Superior Court of said sister state.

The copies of the judicial records of the Superior Court of Chattahoochee County, Georgia, which defendant introduced in evidence, appear to have been certified to by J. F. Chastain, Clerk of the Superior Court of Chattahoochee County, and while said certification recites that it is given under the hand of said Clerk and the seal of said court, this record simply shows a *Notarial* seal.

The United States Constitution requires that full faith and credit be given in each state to the public acts, records and judicial proceedings of every other state, and empowers the Congress of the United States to prescribe the manner in which said judicial proceedings shall be proved. U.S.Const. Art. 4, Sec. 1.

In the exercise of the power invested in it by said constitutional provision the Congress of the United States passed an act directing how proof of judicial proceeding of a state should be made. The relevant part of said act is embodied in Section 687 of the United States Code Annotated, Vol. 28, and is as follows:

"The records and judicial proceedings of the courts of any State or Territory, or of any such county, shall be proved or admitted in any other court within the United States, by the attestation of the clerk, and the seal of the court annexed, if there be a seal, together with a certificate of the judge, chief justice, or presiding magistrate, that the said attestation is in due form. And the said records and judicial proceedings, *so authenticated*, shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken." (Emphasis supplied).

Section 427, Tit. 7, Code of Alabama, 1940, contains the identical provision above quoted from the United States Code.

In the case of Forbes v. Davis, 187 Ala. 71, 65 So. 516, 517, our Supreme Court said:

"Under the Constitution and laws of the United States each state is required to give full faith and credit to the judgments of sister states. Such judgments are not, in a strict sense, foreign judgments; but the state in which the properly authenticated judgment of a sister state is pleaded or offered in evidence is obliged by the federal mandate to accord to such judgment the faith, credit, and respect that would be accorded it in and by the courts of the sister state in which such judgment was rendered."

It is to be noted that the certification of the judgment of the sister state of Georgia, that is, of the Superior Court of Chattahoochee County, Georgia, was not given under the *seal* of that court, nor was it certified that said court was without a seal. Further, there is no certificate of the presiding judge of said court that the said attestation by the Clerk was in due form. So it must be conceded that said judgment was not authenticated either as required by the laws of this State or by the act of Congress. We know of no rule of law or of evidence that permits the authentication of a judgment rendered by a court of a sister state to be shown by the oral testimony of a practicing attorney from the sister state in which said judgment purports to have been rendered.

It is the opinion and judgment of this court that no legal evidence was introduced in the court below of the existence of the judgment of the Superior Court of Chattahoochee County, Georgia, pleaded as res adjudicata in the case at bar, and that the trial court acted correctly in ignoring and disregarding the purported judicial record from the Georgia court. Forbes v. Davis, supra. Weil Bros. v. Southern Ry. Co., 21 Ala.App. 245, 107 So. 38.

We are also of the opinion that the trial court did not err in overruling and denying defendant's motion for a new trial upon the fifth ground of said motion, which, as stated, was based upon the refusal of the trial court to sustain the defendant's plea of res adjudicata, there being no legal evidence in support of said plea.

The judgment of the trial court from which this appeal was taken is due to be affirmed. It is so ordered.

Affirmed.