The appellant was convicted of two counts of robbery in the second degree, a violation of § 13A-8-42, Code of Alabama 1975. He was sentenced as a habitual offender to life imprisonment on each count, with the sentences to run consecutively. He was also fined $2,000, was ordered to pay $50 to the victims' compensation fund, and was assessed court costs.
 I
The appellant argues that he was denied his right to a speedy trial because there was a 17 1/2-month delay between his arrest and his trial. The State, in its brief, sets our the pertinent facts as follows:
"3-8-91 appellant Sims arrested
appellant's bond set
"4-11-91 appellant Sims indicted
appellant's bond set at $40,000
appellant Sims's first defense attorney appointed
 "4-26-91 appellant Sims waives arraignment, pleads not guilty
 "5-23-91 appellant Sims transferred into temporary federal custody for federal criminal arson prosecution
 "6-21-91 appellant Sims convicted of arson in federal criminal court
 "7-3-91 appellant Sims's first defense attorney's motion to withdraw granted by trial court
 "7-18-91 appellant Sims files pro se
motion for speedy trial
 "7-30-91 attorney Sims's second defense attorney appointed
 "11-18-91 appellant's case set for trial on December 10, 1991
 "12-10-91 appellant's trial date continued to February 3, 1992
 "12-11-92 appellant Sims transferred to federal custody at U.S. penitentiary at Terre Haute, Indiana. *Page 977 
"2-___-92 [sic] appellant's trial date continued
 "3-30-92 pro se motion to dismiss second defense attorney filed by appellant Sims
 "___-___-92 [sic] appellant Sims's second defense attorney's motion to withdraw granted by trial court
 "8-6-92 appellant Sims's third defense attorney appointed
"8-27-92 appellant Sims's trial commences"
In Vo v. State, 612 So.2d 1323, 1327 (Ala.Cr.App. 1992), this court stated:
 "The United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182 [2192], 33 L.Ed.2d 101 (1972), set forth four factors to consider in determining whether a defendant was denied his right to a speedy trial. These are (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his rights, and (4) prejudice to the defendant.
 "In looking at the length of the delay, we look at the amount of time between the issuance of a warrant of arrest and the trial. Vincent v. State, 607 So.2d 1290 (Ala.Cr.App. 1992)."
In Vo, delay between the appellant's arrest and trial was 15 months. This court, in Vo, held that such a delay was "not presumptively prejudicial." See also Manning v. State,612 So.2d 1262 (Ala.Cr.App. 1992); Arnett v. State, 551 So.2d 1158
(Ala.Cr.App. 1989) (20-month delay from indictment to trial was not presumptively prejudicial). Although we conclude that the 17 1/2-month delay was not presumptively prejudicial, seeArnett, supra, the other three factors enunciated in Barker v.Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), will be examined because "the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." Barker, 407 U.S. at 530,92 S.Ct. at 2192.
It appears that the reasons for the delay can be attributed to the appellant, whose twice requested to change appointed counsel was granted twice during this 17 1/2-month period. The appellant's trial commenced within 12 1/2 months of the filing of his motion for a speedy trial. Moreover, during that 12 1/2-month period, the appellant was transferred to federal custody to stand trial on pending charges. The record reveals that the appellant failed to take any action to invoke the Uniform Mandatory Disposition of Detainers Act. § 15-9-80 et seq., Code of Alabama 1975.
Moreover, although the appellant asserted his rights in a motion for a speedy trial, it is not apparent from the record whether he objected to any continuance granted by the trial court. Because he filed the motion for speedy trial, however, the factor regarding the defendant's assertion of his rights will weigh in the appellant's favor.
It does not appear from the record that the appellant has suffered any prejudice as a result of the delay; the appellant has failed to show that the delay caused any anxiety or concern or that the delay impaired his defense. Hence, after due consideration of all four factors stated in Barker, supra, and considering the circumstances of this case, we conclude that the appellant was not deprived of his constitutional right to a speedy trial.
 II
The appellant argues that he was denied a fair and impartial trial because the trial court allowed what he considered to be an excessive number of police officers to be present at various times during the course of his trial. More particularly, he argues that "whenever the jurors entered or exited the courtroom, they had to pass by two armed guards stationed at the doorway with an attack dog and a metal detector." He further argues that the security was "uncalled for, unwarranted, and very influential in [the jurors'] decision [making] process."
The record indicates that the trial court had been informed by the Baldwin County Sheriffs Department that at the time of trial the appellant was incarcerated in a high security federal prison and that he had a substantial record. The trial judge stated that although none of the information given by the sheriff's department was verified, he had been informed that additional security was *Page 978 
needed because of the appellant's proclivity for violence; specifically, he said the appellant was rumored to be a "hit man" on the gulf coast and to be an expert in martial arts.
In Goodwin v. State, 495 So.2d 731, 733 (Ala.Cr.App. 1986), this court upheld the trial court's positioning several guards around the defendant during the trial.
 "It is not necessary that there be a formal record of a certain type of misconduct to justify the posting of armed guards. Within constitutional limits, great weight must be accorded the discretion of the trial court, the trial judge is responsible for maintaining order in his courtroom. He understands infinitely better than we what is necessary to perform his duty."
See also Cooper v. State, 611 So.2d 460 (Ala.Cr.App. 1992). In the present case, the trial court did not abuse its discretion.
 III
The appellant argues that the trial court erred in denying his pre-trial motion to "elect or in the alternative to dismiss." Specifically, he argues that the indictment was multiplicitous and, thus, violated his constitutional protection against double jeopardy. The appellant bases his argument on the fact that he was "found guilty of 2 counts of robbery 2nd degree, involving the robbery of 2 people at the same time at the same place, by two alleged assailants, and that both victims had proprietary interests in the property (money and jewels) taken from both victims."
The appellant's argument is without merit, based on the authority of Ex parte McKinney, 511 So.2d 220 (Ala. 1987). In McKinney, the Alabama Supreme Court adopted the position of the majority of states that allow for multiple convictions when more than one person is injured as the result of a single act. In so holding, the McKinney court stated:
 "Adoption of the majority view would place Alabama among those states that have recognized that punishment for a criminal act should be commensurate with the act itself and the injury caused by that criminal act. Absent statutory or constitutional obstacles to the adoption of the majority view, logic and reason persuade us to henceforth apply the principle that a single criminal act that causes injury to more than one person may constitute more than one offense and may support more than one prosecution and conviction.
 ". . . [W]e also hold that henceforth §§ 13A-1-8(b) and 15-3-8 will allow more than one prosecution and conviction when more than one person is injured as a result of a single criminal act."
McKinney, supra, at 225.
Therefore, the appellant's convictions were correct.
 IV
The appellant contends that there was insufficient evidence presented by the State to sustain his convictions for robbery in the second degree.
Section 13A-8-42, Code of Alabama 1975, provides the following definition of robbery in the second degree:
 "(a) A person commits the crime of robbery in the second degree if he violates section 13A-8-43
and he is aided by another person actually present.
 "(b) Robbery in the second degree is a Class B felony."
Section 13A-8-43, Code of Alabama 1975, provides, in pertinent part:
 "(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
 "(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or
 "(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property."
The evidence presented by the State tended to show the following: Joyce and Marral Langham, were approached as they arrived home from a local nightclub by two white males wearing dark-colored ski masks, who demanded that they each give them their jewelry and their money. Mrs. Langham testified that one of the males, who was later identified as the appellant, was wearing a *Page 979 
dark plaid shirt and black shoes, while the other was wearing dirty high-topped tennis shoes, light-colored pants and gloves. Mrs. Langham testified that the robbers bound her hands with grey duct tape. Mrs. Langham further testified that on the morning after the robbery, she identified a plaid shirt found near her home as the shirt worn by one of the robbers. Additionally, there was evidence presented that a blood sample drawn from the appellant matched a blood sample taken from the plaid shirt.
Clifford Yetter, the assistant police chief in Loxley, testified that, on the night of the incident, he was in his patrol car securing the crime scene he observed a truck occupied by two individuals exiting a dead-end road. Officer Yetter testified that he attempted to stop the truck by waving his flashlight, but the driver of the truck sped away. Officer Yetter testified that he pursued the truck and that when the truck was finally stopped, there was only one occupant, the driver, Dale Weiland. Officer Yetter testified that a large ring of keys was discovered in the truck and that the keys on that ring fit locks to apartments in a building that belonged to the appellant. Officer Yetter testified that a pair of voice-activated walkie-talkies wrapped in grey duct tape and two pairs of gloves were also found in the truck. Officer Yetter testified that a number of other items involved in the robbery were found in the truck, including a backpack, a ski mask, Marral Langham's wallet, a roll of grey duct tape, and a revolver. He testified that on the morning following the robbery he picked up the appellant near the Langham house.
Deborah Stewart testified that she lived in the area where the robbery occurred and that she observed the appellant on the morning following the robbery wearing a floral shirt that belonged to her and that had been stored in a storage shed on her property. Ms. Stewart testified that she called the police. She testified that she saw Officer Yetter pick up the appellant in his patrol car and drive away.
In Maxwell v. State, 620 So.2d 93, 96 (Ala.Cr.App. 1992), this court held:
 "[C]ircumstantial evidence will support a conviction as strongly as direct evidence, provided that the circumstantial evidence points to the guilt of the accused. Jones v. State, 514 So.2d 1060, 1066 (Ala.[Cr.App.]1987); Cumbo v. State, [368] 386 So.2d [871] 87 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979). In reviewing a verdict based largely on circumstantial evidence, the court must view the evidence in the light most favorable to the state. Wilbourn v. State, 457 So.2d 1001 (Ala.Cr.App. 1984). Further, 'it is not the province of this court to reweigh the evidence presented at trial.' Watkins v. State, 565 So.2d 1227, 1281 [1231] (Ala.Cr.App. 1991 [1990])."
See also Beard v. State, 612 So.2d 1335 (Ala.Cr.App. 1992);Collins v. State, 611 So.2d 498 (Ala.Cr.App. 1992).
Although the State's evidence in this case was largely circumstantial, sufficient evidence was presented from which the jury could find the appellant guilty beyond a reasonable doubt.
 V
The appellant contends that the trial court erred in allowing testimony of a State's witness concerning his "post-arrest silence" that occurred before he was given Miranda warnings, pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966).
The appellant's contention is unsupported by the record. Officer Yetter testified that while on routine patrol on the morning following the incident, he saw the appellant standing on the side of a road near the Langham residence. Officer Yetter testified that he asked the appellant if he needed a ride. Officer Yetter testified that the appellant responded in the affirmative and asked to be taken to "Club Carroll." Officer Yetter testified, over defense counsel's objection, that when he drove past the nightclub, the appellant did not indicate that he wanted to stop at the nightclub. Officer Yetter further testified that he did not place the appellant under arrest until they arrived at the police station. Hence, because there is no indication from the record that the appellant had been placed under arrest prior to his arrival *Page 980 
at the police station, any argument concerning his silence prior to said arrival is of no moment.
 VI
The appellant argues that the trial court erred in allowing inadmissible evidence to be presented by the State. Specifically, he argues that items recovered from the search of the truck belonging to codefendant Dale Weiland's, as well as items found along a path searched by law enforcement officers using a bloodhound, were irrelevant because, he says, there was no showing that those items were involved in the robberies. However, several of the items seized from the truck, including the duct tape and gloves, were identified as having been used in the robbery. Additionally, the Marral Langham's wallet was found along the wooded path taken by the appellant.
In Rose v. State, 598 So.2d 1040, 1042 (Ala.Cr.App. 1992), this court stated: "In this State, evidence is relevant if it has any logical relationship to the purpose for which it is offered." See C. Gamble, McElroy's Alabama Evidence § 21.10(1) (4th ed. 1991).
Moreover, it is well settled that "a determination of admissibility of evidence rests within the sound discretion of the trial court and will not be disturbed on appeal absent a clear showing of an abuse of discretion." Jennings v. State,513 So.2d 91, 95 (Ala.Cr.App. 1987).
 "[T]he power to decide whether evidence is to be excluded, upon one of the foregoing grounds, [rest] within the sound discretion of the trial judge. This is where such power should lie because, unless some discretion is vested in the trial judge, every ruling upon the admissibility of a particular fact of a kind above-mentioned becomes a law unto itself. If any particular rule of evidence runs into numerous borderline cases, we must either give the trial court some discretion in applying it or admit that the rule is not workable at all. This argument for the investiture of a measurable discretion in the trial court must not be taken, however, as suggesting that an appellate court ought not to correct a plainly prejudicial misuse of discretion by the trial court." (Footnote omitted.)
McElroy's Alabama Evidence § 21.01(6).
Clearly, the items of evidence found in the co-defendant's truck and along the path used by the appellant were relevant to prove whether the appellant committed the charge offenses. Thus, no error occurred here.
 VII
The appellant argues that he was denied the effective assistance of trial counsel under Strickland v. Washington,466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Specifically, he argues that his trial counsel failed to properly prepare for trial because, he says, counsel did not attempt to locate an alibi witness, and did not investigate the forensic evidence expected to be presented by the State.
The record, however, reveals that the trial court specifically asked the appellant whether he wanted to proceed to trial or whether he wanted a continuance in order to locate his alibi witness. The appellant chose to go forward with his trial. See Kolmetz v. State, 600 So.2d 389, 394 (Ala.Cr.App. 1991) (wherein this court stated, "a party cannot by his own conduct invite error and then seek to profit thereby").
Because the appellant has failed to show either that his attorney's performance was deficient or that he was prejudiced thereby, his ineffective assistance argument must fail.Strickland v. Washington, supra.
 VIII
The appellant argues that the trial court erred in sentencing him as a habitual offender for three reasons. First, he argues that the State's proof of his prior foreign conviction for the federal offense of interstate transportation of stolen property, which was introduced for enhancement purposes, was not proper because, he says, it has no criminal counterpart under Alabama law. Further, the appellant argues that the document attempting to prove the prior foreign conviction does not affirmatively show that the appellant was represented by counsel when *Page 981 
he entered the guilty plea that resulted in that conviction. Last, the appellant contends that court documents submitted as proof of the prior foreign conviction were not properly certified, pursuant to § 12-21-70, Code of Alabama 1975, because they were attested to by a deputy clerk and were, therefore, insufficient to prove the prior conviction.
Based on the authority of Rule 26.6(b)(3)(iv), A.R.Cr.P., we find the appellant's argument that Alabama had no "criminal counterpart" lacking in merit. Rule 26.6(b)(3)(iv) provides:
 "Any conviction in any jurisdiction, including Alabama, shall be considered and determined to be a felony conviction if the conduct made the basis of that conviction constitutes a felony under Act 607, § 130(4), Acts of Alabama 1977, p. 812 (§ 13A-1-2(4), Alabama Criminal Code), or would have constituted a felony under the section had the conduct taken place in Alabama on or after January 1, 1980."
Because the conduct made the basis of the appellant's prior conviction, i.e., the interstate transportation of stolen property, is analogous to the conduct proscribed in § 13A-8-20,Code of Alabama 1975, (bringing stolen property into the State), no error occurred in admitting the prior conviction for enhancement purposes.
In regard to the appellant's argument that the certified copy failed to show that he was represented by counsel on his prior conviction, the docket sheet, contained in the record, indicates that the appellant was represented by counsel.Timmons v. State, 436 So.2d 14 (Ala.Cr.App. 1983); Ladd v.State, 431 So.2d 579 (Ala.Cr.App. 1983); Douglas v. State,406 So.2d 1051 (Ala.Cr.App.), writ denied, Ex parte Douglas,406 So.2d 1053 (Ala. 1981).
However, the appellant's argument concerning the improper certification of his foreign conviction does have merit. InAllen v. State, 611 So.2d 1152, 1155-56 (Ala.Cr.App. 1992), this court stated:
 " 'The proper mode of proving prior felony convictions which occur in a sister state is set forth in § 12-21-70, which states in pertinent part:
 " ' "The record and judicial proceedings of the courts of any state or territory or of any such country shall be proved or admitted in any other court within the United States by the attestation of the clerk and the seal of the court annexed, if there is a seal, together with a certification of the judge, chief justice or presiding magistrate that the said attestation is in due form."
" 'McBride v. State, 480 So.2d 619, 620 (Ala.Cr.App. 1985).
 " 'Prior felony convictions may be proven according to § 12-21-70 and Rule 44, A.R.Civ.P. In Ervin v. State, [Ms. 91-186, March 13, 1992] [630] So.2d [115] (Ala.Cr.App. 1992), this court recently held:
 " 'In civil proceedings, § 12-21-70 has been superseded by Rule 44(a)(1), A.R.Civ.P., which provides:
 " ' "An official record kept within the United States, or any state . . . thereof . . . when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by a person purporting to be the officer having the legal custody of the record, or his deputy. If the official record is kept without the state, the copy shall be accompanied by a certificate under oath of such person that he is the legal custodian of such record and that the laws of the state require the record to be kept." ' " (Emphasis added.)
This court in Allen, examined both § 12-21-70 and Rule 44, A.R.Civ.P., to determine whether the appellant's prior convictions were properly proven. In holding that the appellant was correctly sentenced as a habitual offender, this court stated:
 "The record clerk of the Texas Department of Criminal Justice — Institutional Division, S.O. Woods, Jr. had legal custody of the original files and records of the appellant's three prior Texas convictions in his office in Walker County, Texas. He attested that the copies of the records of the convictions were the same as the originals. The seal of the Texas Department of Corrections was imprinted next to his signature. *Page 982 
 "The presiding judge of the Walker County, Texas, Court, Frank J. Robinson, certified that Woods was the record clerk who had legal custody of the original records of the Texas Department of Corrections Justice — Institutional Division. He also certified that the certificates were in 'due form' and that Woods's signature was genuine."
Id. at 1156.
The facts of the instant case are distinguishable fromAllen, however, because here the State failed to comply with the requirements of either § 12-21-70 or Rule 44. Specifically, under the more rigid requirements of § 12-21-70, the State erred in submitting a prior conviction which was improperly certified by the attestation of the "deputy clerk." Additionally, the certification of conviction was not signed by the trial judge indicating that the attestation was in due form.
In Randle v. State, 554 So.2d 1124, 1130 (Ala.Cr.App. 1986), aff'd, 554 So.2d 1131 (Ala. 1987), this court held that the trial court was in error in admitting, at the sentencing hearing, documents which were certified by deputy clerks rather than clerks, as is required by § 12-21-70, Code of Alabama
1975. Further, in Randle, the documents did not contain "a certificate of the judge, chief justice, or presiding magistrate that the said attestation is in due form," as is required by § 12-21-70. See also Peoples v. State, 615 So.2d 97
(Ala.Cr.App. 1992) (wherein the court in remanding the cause to the trial court because the day was omitted from the date on the "certificate of Clerk as to Judge" stated: "while the omission does not per se violate § 12-21-70, the exemplification is nonetheless incomplete.")
Under Rule 44, the appellant's prior convictions could have been proved by a copy of the prior convictions certified by the attestation of the deputy clerk, if the State had submitted along with this copy "a certificate under oath of such person that he is the legal custodian of such record and that the laws of the State require the record to be kept." Rule 44. However, the State failed to do so. Hence, the prior convictions, under the facts of this case, were not properly proved pursuant to § 12-21-70 or Rule 44, Ala.R.Civ.P.
Because the trial court erred in admitting at the sentencing hearing an improper certification of the appellant's foreign conviction, this cause is remanded to the trial court for resentencing.
REMANDED FOR RESENTENCING.
All Judges concur.